UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ESTATE OF DANNY J. SCHRECK, by and through AMBER SCHRECK, its duly appointed Executor/Administrator, AMBER SCHRECK, individually, AMBER SCHRECK as parent and next best friend of A.S., a minor child, and KAYLA SCHRECK, | Case No. |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | **(JURY TRIAL DEMANDED)** |
| VIRTUAL RADIOLOGIC CORPORATION, VIRTUAL RADIOLOGIC PROFESSIONALS OF MINNESOTA, P.A., DR. KATHERINE TOBIN, M.D., SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER, SANFORD CLINIC, | |
| Defendants. | |

COMES NOW, Plaintiffs, and for their causes of action against the Defendants, state as follows:

## PARTIES

### A. *Plaintiffs*

1.      Plaintiff, Estate of Danny Schreck, is a duly authorized estate pending in the Iowa District Court because Danny Schreck was a resident of Iowa at the time of his death.

2.      Plaintiff, Amber Schreck, is one of its duly appointed executors and/or administrators by law authorized to bring this action.

1

3.      Plaintiff, Amber Schreck, is a resident of O'Brien County, Iowa and is the widow of Danny Schreck to whom she was lawfully wed up to the time of his death.

4.      Plaintiff, Kayla Schreck, has at all relevant times, has lived with her mother, Amber Schreck, and until the time of his death, with her natural father, Danny Schreck.

5.      Plaintiff, A.S., is a minor child who, at all relevant times, has lived with her mother, Amber Schreck, and until the time of his death, her natural father, Danny Schreck.

### B. Defendants

6.      Defendant, Virtual Radiologic Corporation ("Virtual"), a corporation, is a citizen of Minnesota, with its principal place of business located in Eden Prairie, Minnesota.

7.      Defendant, Virtual Radiologic Physicians of Minnesota, P.A. (hereinafter "Virtual Physicians"), a corporation, is a citizen of Minnesota, with its principal place of business located in Eden Prairie, Minnesota.

8.      Both Virtual and Virtual Physicians are headquartered at 11995 Singletree Lane, Suite 500, Eden Prairie, MN 55344.

9.      Dr. Katherine Tobin, M.D. (hereinafter "Tobin" or "Dr. Tobin") is an individual, employed by Virtual, who resides in Portsmouth, New Hamphire, but reports to the Minnesota Board of Medicine that her primary location is Virtual at the same address as Virtual's Minnesota headquarters as stated above.

10.     According to the website maintained by the South Dakota Secretary of State, Defendant, Sanford Medical Center is a corporation organized in South Dakota with its principal place of business located at 1305 W. 18th Street, Sioux Falls, SD 57105.

11.     According to the website maintained by the Iowa Secretary of State, Sanford Rock Rapids is an alias for Defendant, Sanford Health Network, which has its principal place of business located at 1305 W. 18th Street, Sioux Falls, SD 57105.

12.     According to the website maintained by the South Dakota Secretary of State, Defendant, Sanford Health is a corporation organized in South Dakota with its principal place of business located at 1305 W. 18th Street, Sioux Falls, SD 57105.

13.     Defendant, Sanford Clinic, according to the South Dakota Secretary of State, Defendant, Sanford Health is a corporation organized in South Dakota with its principal place of business also located at 1305 W. 18th Street, Sioux Falls, SD 57105.

14.     Unless context otherwise indicates, these Defendants – Sanford Health, Sanford Health Network, Sanford Clinic and Sanford Medical Center – shall be collectively referred to as "Sanford" and shall be considered one and the same for the purposes of this lawsuit.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a) (1), (c) because there exists complete diversity of citizenship for the purposes of said statute and because the amount of this controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

16.     Plaintiffs also invoke the supplemental jurisdiction of this Court over all of their claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

17.     This Court has general and specific personal jurisdiction over Dr. Tobin because, *inter alia*, she is licensed to practice medicine in Minnesota, and has been so licensed since 2005, because she is employed by Virtual, a Minnesota company, and on their behalf provides radiologic services in and through the State of Minnesota, because in this case, the order for Dr. Tobin's interpretation of the CT scan at issue was communicated through Minnesota and, in return, on information and belief, her report was communicated to Sanford through Virtual in Minnesota. In addition, Dr. Tobin's liability insurance is provided through Virtual. Furthermore, on information, Virtual provides the software and systems that Sanford used to communicate with Tobin, and vice-versa

3

(via Virtual's operations center, which is based in Minnesota), as well as the equipment that Dr. Tobin used to review the CT scan and communicate her opinions. Similarly, Dr. Tobin purported to act in accordance with the policies, standards of care and procedures of Virtual. Finally, according to the Minnesota Board of Medicine, Dr. Tobin under license number 47582 has reported her primary location to be Virtual at the same address as Virtual's Minnesota headquarters as stated below. Thus, Dr. Tobin transacts business in the State of Minnesota and is subject to jurisdiction in Minnesota pursuant to the long-arm statute, Minn. Stat. § 543.19 and Fed. R. Civ. P. 4.

18.     The Court has general and specific personal jurisdiction over Virtual and Virtual Physicians because, *inter alia*, they have their principal place of business in Minnesota (both at 11995 Singletree Lane, Suite 500, Eden Prairie, MN 55344) and because Virtual engages in continuous and systematic business in Minnesota. On information and belief, the nerve center of both Defendants' operations are located at the same address in Eden Prairie, Minnesota. This Court has jurisdiction over Virtual Radiologic Corporation and Virtual Radiologic Physicians of Minnesota, P.A. pursuant to Minn. Stat. § 543.19 and Fed. R. Civ. P. 4.

19.     In addition, on information and belief, Virtual and Sanford maintained an ongoing relationship, including a contractual relationship whereby Virtual voluntarily undertook to provide radiology services to Sanford's medical practices, that was conducted through Virtual's principal place of business in Eden Prairie, MN.

20.     Among other things, Virtual undertook to fulfill a contract to provide ongoing radiology services to multiple of Sanford's facilities located in Minnesota, including Sanford facilities located in Canby, Minnesota, Westbrook, Minnesota and Tracy, Minnesota, as well as to Sanford Medical Center – Main Campus in Sioux Falls, South Dakota and Sanford Rock Rapids, Iowa among other Sanford locations.

4

21.     This Court has specific and general jurisdiction over Sanford Health Network, Sanford Health and Sanford Medical Center because, *inter alia*, they have a continuous and systematic presence in Minnesota, they have purposefully availed themselves of the laws, privileges, benefits and protections of the State of Minnesota and specifically directed their activities into the State of Minnesota, Sanford owns, uses, or possesses any real or personal property situated in Minnesota, it specifically targets Minnesota residents with advertising and public relations, (including at one time a large banner hanging from the side of the Target Center in Minneapolis, Minnesota) and it systematically transacts business in the State of Minnesota through multiple channels, including its medical facilities and other economic vehicles, as well as through its relationships with Virtual as described in this Complaint, and jurisdiction is otherwise appropriate under Minn. Stat. § 543.19 and Fed. R. Civ. P. 4.

22.     Similarly, the Minnesota Star Tribune newspaper reported in a May 5, 2013 article that "In Minnesota, Sanford Health paid $2 million to put Sanford's name on a public arena in Bemidji, where it owns the hospital." http://www.startribune.com/between-sanford-health-and-t-denny-sanford-deep-ties/206116291/.

23.     Furthermore, with specific reference to this case, on information and belief, Sanford, through its joint computer system with Virtual transmitted the order for radiological services to Virtual's operations center in Minnesota, and received radiological services through Virtual's headquarters in Minnesota, including the negligent interpretation of the CT scan that is at issue in this case.

24.     Further, on its website, Sanford lists over one hundred locations located in more than thirty (30) different towns and cities within the borders of the State of Minnesota where it provides medical services and/or maintains stores and other operations in Minnesota. The web address for such statement is https://www.sanfordhealth.org/locations?countrySubdivision=US-MN&page=1.

One "Profile by Sanford" location is advertised to have opened in Eden Prairie, Minnesota in November 2018 on Sanford's website located at https://news.sanfordhealth.org/1st-profile-sanford-opens-twin-cities-eden-prairie/.

25.    On information and belief, Sanford owns and/or possesses a vast collection of real property in Minnesota, including, but not limited to, property used to provide medical services to the residents of the State of Minnesota.

26.    For the reasons set forth throughout this Complaint, the exercise of personal jurisdiction over Sanford Health, Sanford Medical Center and Sanford Health Network is consistent with traditional principles of fairness and substantial justice, particularly in light of Sanford's vast, continuous and systematic contacts with the State of Minnesota.  Sanford's contacts with Minnesota are so substantial that it should reasonably anticipate being haled into court in Minnesota.

27.    The specific harm in this case arises directly out of Sanford's contacts and activities with Virtual in Minnesota and the harm arises out of the Sanford-Virtual relationship, conducted in substantial part through Virtual's Minnesota assets, including its computer systems for the communication of health data, its orchestration of the interpretation of CT scans and its quality assurance programs.

28.    On information and belief, to facilitate the provision of radiologic services from Virtual to Sanford, Virtual, through its headquarters in Eden Prairie, Minnesota, took orders for radiological services through a picture archiving and communications service (hereinafter "PACS") that Virtual describes as serving as a basis of partnership between Virtual and clients like Sanford as follows: "With the world's largest PACS implementation, our scale and scope means we have the insight and the flexibility to create a partnership that meets - and exceeds - your definition of success."  https://www.vrad.com/radiology-services/.

29.     In addition, on information and belief, Sanford was engaged in ongoing and continuous practice of medicine in Minnesota, not only through its clinics, but also by the provision of telemedicine from Sioux Falls, South Dakota to Minnesota medical clinics.  Similarly, Sanford advertises to new and existing patients in Minnesota the opportunity for "e-visits," permitting medical care by computer, and "video visits," which it describes on its website as follows: "you can see a health care provider from home, work or nearly anywhere in between. During a video visit, you can meet face to face with our medical team for any acute, non-emergent primary care need including coughs, colds, rashes, aches and pains."     The website is available at http://www.sanfordhealth.org/promo/videovisit.

30.     Accordingly, due to their business activities in Minnesota, Sanford Health Network and Sanford Medical Center are registered with the Minnesota Secretary of State and list, as their registered agent, Tammy Loosbrock of 1600 N. Kniss, Luverne, MN 56156.

31.     Personal jurisdiction over each of the Defendants is proper for the reasons stated above and for at least one of the following reasons: (a) Defendant, Sanford, maintains a systematic and continuous presence in Minnesota for business purposes, as it operates medical facilities in numerous counties in Minnesota and continuously sees patients and conducts related business in Minnesota, and (b) a substantial part of the negligence that is alleged to have led to the untimely death of Danny Schreck occurred in Minnesota at and through Defendant, Virtual's facilities in Eden Prairie, MN, and (c) because each of the Defendants holds a status and/or engaged in conduct for which personal jurisdiction is appropriate under the long-arm statute enacted in the State of Minnesota.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) and (3).

## FACTS

*The Incident*

7

33.     Danny Schreck died from injuries related to aortic dissection and rupture.

34.     His death would have been prevented through the timely diagnosis and treatment of the aortic dissection.

35.     According to the records of Sanford Rock Rapids Medical Center, Danny Schreck first arrived in Sanford's care at 4:30 p.m. on April 14, 2015 reporting that he "was at work when he had a sudden pain in his chest on the left side that radiated to his jaw," the CT scan at issue was eventually ordered and the report of Dr. Tobin's interpretation of the CT scan at issue was produced at 6:27 p.m. Central (7:27 p.m. Eastern time). Mr. Schreck was transferred to Sanford Medical Center in Sioux Falls, South Dakota at 10:50 p.m. central time, and according to the records, he died of aortic dissection at 2:23 a.m. on April 15, 2016. Mr. Schreck was thus in the care of Sanford for seven minutes shy of ten (10) hours before his death.

36.     While they were diagnosing his condition, Sanford's employed medical professionals considered aortic dissection to be one of the potential causes of Danny Schreck's symptoms.

37.     Sanford's employed medical professionals knew or should have known that aortic dissection was one of the most life-threatening potential diagnosis.

38.     During workup, and before Danny Schreck had been transferred to Sioux Falls, the medical providers had enough information to reasonably deescalate myocardio infarction and other potential life threating down the differential diagnosis and the standard of care required that aortic dissection was the disease that they should have concentrated on ruling in or ruling out as a potential concern.

39.     The applicable standard of care for a suspected aortic dissection, as accepted in the medical community, is CT angiogram ("CTA") of the chest.

40.     Dr. DeJong, who was the supervising and attending physician at the time that Danny Schreck was at Sanford Rock Rapids has stated that a CT of the chest is nearly 100% effective in identifying an aortic dissection when read properly.

41.     No such CT or CTA of the chest was ever obtained while Danny Schreck was alive and in the care of Sanford.

42.     Dr. Serieux, who was the attending at Sanford Medical Center, acknowledged the importance of a CTA/CT of the chest, stated she intended to obtain one, but "didn't do it in time." She acknowledged that timely obtaining that kind of CT, as opposed to a neck CT, was "important."

43.     Medical literature provides that for every hour that passes for a patient suffering a dissecting aorta, the chance of death increases by 1% or more, but that operative intervention would have provided Danny Schreck at least a 75% chance of survival.

44.     Despite these facts, Sanford's medical providers chose to do a CT of the neck.

45.     The CT of the neck is not ideal for diagnosing aortic dissection and does not meet the standard of care.

46.     Nevertheless, on the CT of the neck reviewed by Virtual and Dr. Tobin, it was observable that Danny Schreck was suffering an aortic dissection.

47.     But, Dr. Tobin and Virtual failed to report that an aortic dissection was happening.

48.     In fact, they reported the opposite – that there were no acute abnormalities.

49.     After Danny Schreck's death, Dr. Tobin informed Sanford that the CT scan showed an aortic dissection that she had failed to include in her report.

50.     Dr. Tobin has since acknowledged that the aortic dissection was observable on the CT scan available to her before she produced her report as referenced above, but she claims that she did not see it, all the while stating that she does not recall her review of the CT prior to issuing her report, stating "I don't remember interpreting that case."

51.     Qualified medical experts have reviewed the medical records and determined that Dr. Tobin should have seen the aortic dissection on the CT of the neck.

52.     In that regard, Dr. Kevin Duwe, a well-respected and highly-qualified radiologist has opined that an abnormality consistent with aortic dissection appears on the CT of the neck and that "[f]ailure to identify these findings is a deviation from the standard of care for the interpretation of radiologic images."

53.     Qualified medical experts have reviewed the medical records and opined that Sanford deviated from the standard of care by not timely ordering a CTA and by failing to take reasonable steps to diagnose the aortic dissection and control the risk of further damage from it, including as set forth in the expert reports attached to the affidavit attached hereto as Exhibit 1.

54.     Qualified medical experts have opined that Sanford deviated from the standard of care by not timely diagnosing the aortic dissection – that it should have been high on differential diagnosis, tested for early (via a CTA) and promptly treated, and that if it had been, with a high degree of probability, Mr. Schreck would most likely have survived.

### Additional Relevant Facts Concerning Virtual, Dr. Tobin, Sanford and Their Relationships

55.     Long before the events giving rise to this case, Virtual Physicians and Sanford Clinic, for the apparent benefit of Virtual and Sanford entered a Teleradiology Services Agreement with Sanford Clinics for the benefit of both Sanford facilities at issue in this case, including Sanford Rock Rapids in Rock Rapids, Iowa and Sanford Medical Center – Main Campus in Sioux Falls, S.D., as well as many other clinics.  Said agreement appears to have been on the letterhead of Virtual.

56.     On information and belief, Virtual Physicians is an alter ego of Virtual.  Dr. Benjamin Strong, the reported Chief Medical Officer of Virtual is the reported Chief Executive of Virtual Physicians.

57.     In 2005, in a press release announcing that Virtual was acquired by Mednax, the

companies stated, "The company's headquarters and 24/7 operations and client support center will

continue to be based in Eden Prairie, Minnesota." http://www.marketwired.com/press-release/vrad-

to-be-acquired-by-mednax-nyse-md-2018890.htm.

58.     In the same release, Virtual was described, in part, as follows:

*vRad (Virtual Radiologic) is a leading outsourced radiology physician
services and telemedicine company with over 350 U.S. board-certified and eligible
physicians, 75% of whom are subspecialty trained. The company interprets over 5
million patient studies annually -- and processes over 1.2 billion images on the
world's biggest and most advanced teleradiology PACS -- for its 2,100+ client
hospital, health system and radiology group facilities...[A] leader in imaging
analytics, vRad provides access to the only radiology patient care benchmarking
platform (vRad RPC(SM) Index) with 31 million+ normalized imaging studies,
growing at 400,000 per month. vRad's clinical expertise and evidence-based insight
help clients make better decisions for the health of their patients and their imaging
services.*

59.     Virtual provided medical services directed to Rock Rapids, Iowa, for the purposes

of providing diagnoses, care and treatment of Danny Schreck while he was located in Rock Rapids,

Iowa and pursuant to an order or request for services originating from Rock Rapids, Iowa.

60.     The various Sanford Defendants – Sanford Health, Sanford Health Network,

Sanford Clinic and Sanford Medical Center – are alter egos of one another.

61.     In describing itself, Sanford states:

*Sanford Health is an integrated health system headquartered in the
Dakotas. It is the largest, rural, not-for-profit health care system in the nation with
45 hospitals and 289 clinics in nine states and three countries. With 28,000+
employees, including 1,300+ physicians in more than 80 specialty areas of
medicine, Sanford Health is the largest employer in the Dakotas.*

http://www.sanfordhealth.org/about

62.     Each of the Sanford Defendants shares the same principal place of business located

at 1305 W. 18th Street, Sioux Falls, South Dakota.

63.     On information and belief, Defendant, Sanford Health, is the flagship entity through

which all other Defendants do business.

64. Also, on its website, located at https://www.sanfordhealth.org/locations/sanford-rock-rapids-clinic, Defendant represents that Sanford Rock Rapids Clinic is "A member of Sanford Health, Sanford Rock Rapids Clinic is proud to keep quality healthcare close to home for residents of the Lyon County area."

65. Likewise, on its website at https://www.sanfordhealth.org/locations/sanford-rock-rapids-medical-center, Sanford Health represents that "Sanford Rock Rapids Medical Center is part of Sanford Health."

66. Similarly, on its website at https://www.sanfordhealth.org/locations/sanford-usd-medical-center, Defendant, Sanford Health, holds out Sanford USD Medical Center (where Danny Schreck was harmed by the acts and omissions alleged herein) as a hospital that is owned and/or operated by Sanford Health.

67. Also according to Sanford Health's website at times after Danny Schreck's death, within the executive leadership of Sanford Health was Jesse Tischer, who was tasked as President of Sanford Health Network.

68. Thus, Defendants, Sanford Health and Sanford Health Network, have been commonly controlled with common executive leadership and support.

69. Defendant, Sanford Health Network, is an alter ego of Defendant Sanford Health such that the two Defendants are one and the same and coextensively liable for the acts and omissions of Sanford Health Network and the health care providers practicing within Sanford Health Network.

70. Defendant, Sanford Medical Center (a/k/a Sanford USD Medical Center), is an alter ego of Defendant Sanford Health such that the two Defendants are one and the same and coextensively liable for the acts and omissions of Sanford Health Network and the health care

providers practicing within Sanford Health Network.

71.     On social media, including his Linked-In page, Mr. Tisher held himself out as employed by Sanford Health and as serving as President of Sanford Health Network.

72.     The marketing emblem of both Defendants, as used in their public imagery on the internet, is the same, appearing as follows:



## CONFORMANCE WITH MINN. STAT. § 145.682

73.     In compliance with Minn. Stat. § 145.682, Plaintiffs submit the affidavits of Plaintiffs' counsel confirming that the facts of the case have been reviewed by Plaintiffs' attorneys with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to Danny Schreck.

74.     A copy of said affidavits, along with the curriculum vita and written opinions of such experts is attached hereto as Exhibits 1 and 2.

## INTRODUCTION OF THE CLAIMS

75.     Plaintiffs bring this wrongful death lawsuit against Defendants on account of injuries and damages arising from the death of Danny Schreck due to the combined medical negligence of Defendants, including the negligence of the medical providers at Sanford Health, Sanford Health Network and Sanford Medical Center in failing to timely or correctly diagnose and treat Danny Schreck's aortic dissection, and Virtual Radiologic Corporation's failure to properly interpret a computerized axial tomography ("CT") scan which demonstrated that Danny Schreck was suffering an aortic dissection on April 14, 2016 and April 15, 2016, as well as its failure to properly report the

findings apparent on said CT scan to Danny Schreck's treating medical providers.

76.     The medical negligence of Defendants was the cause of Danny Schreck's untimely death.

77.     Danny Schreck was in his mid-40s and leaves behind a young wife and two daughters – neither of whom has yet to graduate high school.

78.     As to Defendants, Virtual Radiologic Corporation and its employee and/or actual or ostensible agent, Dr. Katherine Tobin, M.D., this case involves claims for (1) failing to timely and correctly interpret a CT scan which prior to 6:27 p.m. central time on April 14, 2016 demonstrated that Danny Schreck was suffering an aortic dissection; (2) for wrongly reporting to Danny Schreck's other medical providers that the CT scan revealed no "acute abnormality," when, in fact, the CT scan revealed an life-threatening aortic dissection that required surgical intervention; (3) for failing to correct the report in a timely manner prior to his death to advise Danny Schreck and/or his other medical providers that he was suffering an aortic dissection, and (4) for attempting to cover up the medical malpractice by refusing to enter an amendment into the medical records after Virtual and Tobin realized that the initial report was inaccurate and wrong.

79.     This case also involves the vicarious liability of Sanford for the medical negligence of Virtual and Tobin as, *inter alia*, the Sanford Defendants held themselves out to Danny Schreck as a complete emergency department and hospital, respectively, where patients could expect to be provided all pertinent services directly, including CT scans and interpretations thereof.

80.     Tobin was an employee and/or actual agent and/or ostensible agent of Virtual; Tobin's wrongful actions constituting medical malpractice were committed within the scope of that agency and/or employment, and Virtual is vicariously liable for the negligence of Tobin.

81.     Virtual and Tobin were the actual and/or ostensible agents of Sanford Health, Sanford Health Network and Sanford Medical Center; Virtual and Tobin's wrongful actions

constituting medical malpractice were committed within the scope of the agency and Sanford is vicariously liable for the negligence of Virtual and Tobin.

82.     This case also involves events of direct medical negligence on the part of Sanford and its medical professionals, including Drs. Chester DeJong, Holli Charbonneau and Rene Serieux, as well as Physician's Assistant, Rebecca Roeman for medical malpractice, including the failure to timely or properly work up Danny Schreck's condition, their failure to diagnose Danny Schreck's aortic dissection and failure to timely or properly treat Danny Schreck for aortic dissection.  Among other things, Sanford's medical professionals should have ordered a CT angiogram ("CTA") of the chest soon after Danny Schreck arrived in the Emergency Department.  A CTA of the chest would have almost certainly revealed that Danny Schreck suffered an aortic dissection and was, in fact, the standard of care applicable to the Sanford treating medical providers while Danny Schreck was in their care.

## COUNT I
## NEGLIGENCE VERSUS ALL DEFENDANTS

83.     Plaintiffs replead, restate and reallege each and every other allegation appearing above or below this paragraph by this reference and incorporate the same as though fully set forth herein.

84.     Defendants, and each of them, were required to exercise reasonable care for the protection and well-being of Danny Schreck.

85.     Each of the Defendants failed to do so and those careless acts and omissions were the direct cause of Danny Schreck's death.

86.     Danny Schreck presented to Sanford Rock Rapids Medical Center in Lyon County, Iowa on April 14, 2016 for chest pain and was seen by Rebecca Roemen, P.A., whose supervising physician was Chester Dejong, M.D.  They consulted with Dr. Christopher Carlisle

15

by telemedicine while Dr. Carlisle was located at Sanford Medical Center in Sioux Falls, South Dakota.

87.     Danny Schreck presented with severe, sudden-onset chest pain that radiated to his left neck and left jaw.

88.     The symptoms were consistent with aortic dissection.

89.     Danny Schreck presented with multiple risk factors for aortic dissection.

90.     Defendants, through the above-referenced physicians, knew that Danny Schreck was at risk for aortic dissection.

91.     Defendants knew or should have known that time is of the essence for diagnosing an aortic dissection so that intervention could be made before the patient died.

92.     As was made known to Defendants in a timely manner, Danny Shreck had a previous  transected thoracic aortic repair secondary to a MVA in 1991.  Other risk factors known to Defendants included, but were not necessarily limited to, the fact that Danny Schreck had a history of being overweight, a former smoker, who had prior heart trauma, hypertension, sleep apnea and that his age was a risk.  Furthermore, the fact that Danny Schreck's severe chest pain happened in a sudden onset was indicative of increased risk of aortic dissection.

93.     In Sanford's emergency department, Danny Shreck displayed aggravated anxiety, extreme pain despite the use of strong pain relievers and anti-anxiety medications (such as morphine and Ativan), shortness of breath, heart palpatations and nausea – all symptoms that Defendants knew or should have known were consistent with aortic dissection.

94.     Defendants knew or should have known that a CTA was the standard of care and was required in order to most properly and timely determine whether Danny Schreck was suffering from an aortic dissection.

95.     Yet, inexplicably, Rebecca Roemen, P.A. ordered a CT scan of the neck soft tissue and did not order a CTA.

96.      Ms. Roemen, Dr. Carlisle, Dr. DeJong and Sanford failed to order a CT of the chest without and with IV contrast, as the standard of care required be done.

97.      Instead, a portable chest X-ray was ordered and read by Robert Thorbrogger M.D. as minimally widened upper mediastinum compared to a PA chest X-ray from 2012.  A widened upper mediastinum is consistent with and suggestive of aortic dissection, as Defendants knew or should have known.

98.      If proper imaging had been conducted, including a CT chest without and with IV contrast, then Sanford's medical staff would have identified the signs of aortic rupture, which, pursuant to applicable standards of care, would have led to emergency surgery to repair the rupture before it would injure Danny Schreck or cause his death.

99.      If Defendants, including Virtual, would have employed reasonable care in analyzing the CTs that were obtained, Defendants should have made a proper diagnosis of Danny Schreck's condition and provided the treatment he needed to avoid serious injury or death.

100.      Instead, apparently based on direction from Sanford medical staff in Sioux Falls, S.D., Danny Schreck was subsequently transferred to Sanford Medical Center, Sioux Falls, S.D. on or about 2050 hours the same day that he was admitted to Rock Rapids.

101.      Danny Schreck was admitted to the ER at Sanford Medical Center at 2141. He was evaluated in the ER by Dr. Holly Charbonneau, M.D.

102.      Dr. Charbonneau, aware of Danny Schreck's history, including that as stated above, knew or should have known that there was a need to conduct a CTA pursuant to the standard of care, but she did not order one.

103.      Danny Schreck was then admitted to Sanford by Dr. Rena Serieux. M.D.

104.      Drs. Charbonneau and Serieux, along with Sanford, failed to conduct a proper workup consistent with the applicable standard of care, failed to identify Danny Schreck's

medical condition, which if the applicable standard of care had been followed (including the immediate ordering of a CTA), would more likely than not been identified, appropriate care rendered and Danny Schreck saved from misery and death.

105.    Danny Schreck suffered a cardiac arrest due to the aortic dissection with rupture and was reported by Sanford to have died at 0223 hours on April 15, 2016.

106.    An autopsy was performed that found that Danny Schreck had died from aortic dissection with rupture. His secondary causes of death were hemopericardium and bilateral hemothorax.

107.    Defendants were negligent in the following particulars:

a.  Failing to order a CT chest at the same time a CT neck soft tissue was ordered at Sanford Rock Rapids Medical Center.

b.  Failing to timely order a CTA.

c.  Failing to adequately manage Danny Schreck's blood pressure.

d.  Failing to employ reasonable care in the review of the diagnostics obtained with respect to Danny Schreck's condition and failure to use reasonable care in the diagnosis of Danny Schreck's condition.

e.  Failing to rule out a thoracic aortic dissection in someone who had suffered the same remotely.

f.  Failing to meet the applicable standards of care for diagnosis of Danny Schreck, in light of the totality of information available to Defendants, including Danny Schreck's symptoms consistent with aortic dissection with rupture and his prior history of aortic dissection and other risk factors.

g.  Failing to provide adequate or proper care and medical treatment in light of Danny Schreck's medical condition.

18

h.  Failing to exercise appropriate and reasonable professional care and attention when interpreting the CT of the neck to identify the observable aortic dissection appearing on the CT.

i.  The failure and thus negligence to suspect and rule out a thoracic aortic dissection falls on the shoulders of Defendants Sanford, Rebecca Roemen, P.A., Chester Dejong, M.D. at Sanford Rock Rapids Medical Center in Rock Rapids, Iowa and Drs. Carlisle, Charbonneau, and Serieux, at Sanford Medical Center in Sioux Falls, South Dakota, as well as Defendants, Virtual and Dr. Tobin.

108.    The standard of care recognized by the medical community as applicable to the particular defendant's conduct is as set forth above, including particularly, the timely ordering, reading and reporting of a CTA of the chest to assess the risk that Danny Schreck was suffering an aortic dissection.

109.    Defendants, and each of them, deviated from the applicable standard of care accepted in the medical community for the particular presentation of Danny Schreck on April 14 and 15, 2016 and failed to employ the applicable standard of care to diagnose aortic dissection.

110.    Defendants deviation from the standard of care directly resulted in the injury and death of Danny Schreck, and consequently to the Plaintiffs herein.

111.    Drs. DeJong, Carlisle, Charbonneau and Serieux, as well as Rebecca Roemen have at all times  material hereto been actual and ostensible agents of Sanford.

112.    Dr. Tobin has at all times material hereto been an actual and/or ostensible agent of Sanford and Virtual.

113.    Virtual has at all times material hereto been an actual and/or ostensible agent of Sanford.

114.    Sanford is vicariously liable for each and every of the acts and omissions set forth above, including all acts of medical negligence that contributed to and/or caused the death

of Danny Schreck by each of the Defendants and by each of the medical staff at Sanford Medical Center and Sanford Rock Rapids.

115.    But for the medical negligence of the Defendants, Danny Schreck would not have died.

116.    The negligence of the Defendants was the direct, actual and proximate cause of the injuries Danny Shreck incurred as well as his death.

117.    As a direct, actual and proximate cause of Defendants' negligent acts and omissions, Plaintiffs have suffered a pecuniary loss that has had an effect, and will in the future effect their physical and mental wellbeing.

118.    As a direct, actual and proximate cause of Defendants' negligent acts and omissions complained of herein, Plaintiff, Estate of Danny Schreck is entitled to damages including the following:

a.    Loss of consortium, companionship, society, support and services on behalf of Amber Schreck, Kayla Schreck and A.S..

b.    Lost chance of survival.

c.    Funeral and burial expenses, including interest thereupon.

d.    Loss of accumulation and income to the Estate.

e.    Pre-death physical and mental pain and suffering.

f.    Pre-death loss of full mind and body.

g.    The cost of any and all medical charges associated with the care and transportation of Danny Schreck.

h.    Present value of the additional amounts Decedent would reasonably be expected to have accumulated as a result of his own effort had Decedent lived out the term of his natural life.

i.   Lost future earning capacity of Danny Schreck and Amber Schreck.

j.   Increased living expenses incurred as a result of the loss of Danny Schreck.

k.   Loss of services, protection, care, and/or assistance suffered by Amber Schreck, Kayla Schreck and A.S. as a result of the death of Danny Schreck.

l.   Loss of income, wages, and benefits suffered by Amber Schreck, Kayla Schreck and A.S. as a result of the death of Danny Schreck.

m.   Sorrow, mental anguish, and loss of solace, and loss of society, companionship, care and guidance suffered by Amber Schreck, Kayla Schreck and A.S.

n.   Any and all other damages as may be identified during discovery in this matter, including as are set forth in the report and opinions of Dr. Stan Smith as previously provided to the Defendants.

119.   As a direct, actual and proximate cause of Defendants' negligent acts and omissions complained of herein, Danny Schreck's wife, Amber Schreck, has suffered loss a loss of services, companionship, society and support, including, but not limited to, the present value of the amount of financial support which Danny Schreck would have contributed to her but for his untimely death. Plaintiffs, Amber Schreck and the Estate of Danny Schreck, are entitled to, seek and pray for compensation equal to the damage that Amber Schreck has sustained as a result of the death of her husband.

120.   As a direct, actual and proximate cause of Defendants' negligent acts and omissions complained of herein, Danny Schreck's daughter, Kayla Schreck, has suffered loss a loss of services, companionship, society and support, including, but not limited to, the present value of the amount of financial support which Danny Schreck would have contributed to her but for his untimely death. Plaintiffs, Kayla Schreck and the Estate of Danny Schreck, are entitled to, seek and pray for compensation equal to the damage that Amber Schreck has sustained as a result of the death of her

father.

121.     As a direct, actual and proximate cause of Defendants' negligent acts and omissions complained of herein, Danny Schreck's daughter, A.S., has suffered loss a loss of services, companionship, society and support, including, but not limited to, the present value of the amount of financial support which Danny Schreck would have contributed to her but for his untimely death. Plaintiffs, A.S. and the Estate of Danny Schreck, are entitled to, seek and pray for compensation equal to the damage that Amber Schreck has sustained as a result of the death of her father.

122.     Defendants, and each of them, are jointly and severally liable for the injuries and damages suffered by Plaintiffs in this case.

WHEREFORE, Plaintiffs pray for judgment against Defendants, SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER, SANFORD CLINIC, VIRTUAL RADIOLOGIC CORPORATION, DR. KATHERINE TOBIN, M.D. and VIRTUAL RADIOLOGIC PROFESSIONALS OF MINNESOTA, P.A jointly and severally herein in an amount of just, reasonable and adequate compensation for the injuries and damages as well as the loss of consortium, companionship, services and society they have sustained, together with interest as by law allowed and the costs of this action.

## COUNT II

### (NEGLIGENCE VERSUS VIRTUAL, VIRTUAL PHYSICIANS AND DR. TOBIN)

123.     Plaintiffs replead, restate and reallege each and every other allegation appearing above or below this paragraph by this reference and incorporate the same as though fully set forth herein.

124.     Virtual and Dr. Tobin voluntarily undertook to properly and in a timely manner review and interpret the CT scan ordered by Ms. Roeman and accurately report abnormalities that were observable on the CT images.

125.     On information, Dr. Tobin had available information, through the Virtual computer software linking her to Sanford, that the request for her review, interpretation and report was coded "stat emergency" and that it involved a "potentially life-threatening...condition for which an interpretation is clinically needed immediately."

126.     Also on information, Dr. Tobin had available from the same source, a history that included that Danny Schreck was "experiencing pain on the left side from the jaw down his neck; states pain continues into clavicular area of chest."

127.     A competent radiologist exercising the degree of care required, and following the applicable standard of care, would have known from such history that an issue involving the heart or aorta should be considered in the interpretation of the CT.

128.     Indeed, the fact that Danny Schreck was suffering an aortic dissection was observable on the CT.

129.     Dr. Tobin and Virtual, while failing to exercise reasonable care and attention, failed to observe the aortic dissection on the CT and/or failed to report the aortic dissection that was observable on the CT.

130.     The standard of care recognized by the medical community as applicable to the particular defendant's conduct for the review of such a CT is to carefully examine and interpret the images and then properly report pertinent observable acute abnormalities to the extent reasonably possible, particularly under the circumstances then existing.

131.     Defendants, Virtual and Tobin deviated from the applicable standard of care accepted in the medical community for the review, interpretation and reporting of the CT and failed to employ the applicable standard of care to diagnose and report the aortic dissection that was observable on the CT.

132.     The deviation from the standard of care by Dr. Tobin and Virtual directly resulted

23

in the injury and death of Danny Schreck, and consequently to the Plaintiffs herein.

133.    A radiologist, exercising the proper and requisite degree of skill, education, experience and care would have observed and interpreted the CT as showing the aortic dissection on the CT and timely reported it.

134.    Defendants, Dr. Tobin and Virtual failed to exercise the degree of skill, education experience and care required of them and failed to diagnose and report the aortic dissection.

135.    Long after Danny Schreck was dead, Virtual alerted Dr. Tobin to the fact that the aortic dissection was observable on the CT.

136.    Dr. Tobin then examined the CT again and saw that it did, in fact, show an aortic dissection had occurred.

137.    She then contacted Sanford to so inform them, only to learn that her prior failure to timely and properly diagnose the condition had led to Danny Schreck's death.

138.    But for the medical negligence of the Defendants, Danny Schreck would not have died.

139.    The negligence of the Defendants was the direct, actual and proximate cause of the injuries Danny Shreck incurred as well as his death.

140.    As a direct, actual and proximate cause of Defendants' negligent acts and omissions, Plaintiffs have suffered the injuries and damages as set forth in Count I, which by this reference is incorporated as though fully set forth herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER, SANFORD CLINIC, VIRTUAL RADIOLOGIC CORPORATION, DR. KATHERINE TOBIN, M.D. and VIRTUAL RADIOLOGIC PROFESSIONALS OF MINNESOTA, P.A jointly and severally herein in an amount of just, reasonable and adequate compensation for the injuries and damages as well as the

loss of consortium, companionship, services and society they have sustained, together with interest as by law allowed and the costs of this action.

## COUNT III

## (VICARIOUS LIABILITY VERSUS VIRTUAL RADIOLOGIC CORPORATION)

141.   Plaintiffs replead, restate and reallege each and every other allegation appearing above or below this paragraph by this reference and incorporate the same as though fully set forth herein.

142.   Dr. Tobin was an employee and/or actual agent and/or ostensible agent of Virtual.

143.   Dr. Tobin's wrongful actions constituting medical malpractice and misdiagnosis were committed within the scope of that agency and/or employment.

144.   Dr. Tobin was under Virtual's supervision.

145.   Dr. Tobin was under Virtual's control.

146.   Dr. Tobin's wrongful acts and omissions were foreseeable to Virtual and it knew or should have known of them.

147.   Virtual is liable for the wrongful acts of Dr. Tobin under a doctrine of respondeat superior.

148.   Virtual is liable for the wrongful acts of Dr. Tobin because she was an actual and ostensible agent of Virtual at all relevant times hereto.

149.   Virtual is vicariously liable for the negligence of Tobin.

WHEREFORE, Plaintiffs pray for judgment against Defendants, SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER, SANFORD CLINIC, VIRTUAL RADIOLOGIC CORPORATION, DR. KATHERINE TOBIN, M.D. and VIRTUAL RADIOLOGIC PROFESSIONALS OF MINNESOTA, P.A jointly and severally herein in an

amount of just, reasonable and adequate compensation for the injuries and damages as well as the loss of consortium, companionship, services and society they have sustained, together with interest as by law allowed and the costs of this action.

## COUNT IV

## (VICARIOUS LIABILITY VERSUS SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER)

150.     Plaintiffs replead, restate and reallege each and every other allegation appearing above or below this paragraph by this reference and incorporate the same as though fully set forth herein.

151.     On information and belief, Rebecca Roemen, P.A. and Dr. Chester DeJong, were, at all relevant times herein, continuously and systematically employed at Sanford's medical facilities located in Rock Rapids, Iowa.

152.     On information and belief, Drs. Christopher Carlisle, Rena Serioux and Holli Charbonneau were, at all relevant times herein, continuously and systematically employed at Sanford's medical facilities located in Sioux Falls, South Dakota.

153.     Drs. Rena Serioux, Christopher Carlisle, Chester DeJong and Dr. Holli Charbonneau, as well as Physician's Assistant, Rebecca Roeman, P.A., were, at all times relevant to the claims in this case, at least with respect to the medical services and care provided to Danny Schreck, employees and authorized agents of Sanford.

154.     Each said medical provider was an actual and ostensible agent of Sanford.

155.     Each said medical provider was under the supervison and control of Sanford.

156.     A reasonably prudent person in the Danny Schreck's position would be justified in the belief that the care in question was being rendered by the hospital or its agents.

157.     Sanford, through its acts and conduct, made it appear to such patients as though the care in its entirety, including as rendered by the medical professionals at Sanford were provided by

26

Sanford and its agents.

158.     Each of the said physicians and medical staff, are held out by Sanford Health as employees or apparent agents of Sanford, including with listings on Sanford Health's website holding them out as employees of Sanford.

159.     Each negligent act or omission committed by said employees and agents was done in the course and scope of their employment and/or agency with Sanford.

160.     Sanford (including Sanford Health, Sanford Medical Center and Sanford Health Network) is vicariously liable for the acts and omissions of its agents and employees, including without limitation, Drs. Rena Serioux, Christopher Carlisle, Chester DeJong and Dr. Holli Charbonneau and Physician's Assistant, Rebecca Roeman with respect to the medical care and treatment they provided or, as the case may be, should have provided to, Danny Schreck.

161.     The negligent acts and omissions alleged herein committed by the individual defendants who are physicians or medical staff, were committed in the scope of and performance of the actual and/or apparent authority of their actual and/or apparent agency with Sanford Health, Sanford Medical Center and/or Sanford Health Network.

162.     Sanford is vicariously liable for the negligence of Virtual and Tobin.

163.     Sanford, Tobin, Virtual and Virtual Physicians are jointly and severally liable for the injuries to, and death of, Danny Schreck.

164.     As a direct, actual and proximate cause of the medical negligence of Dr. Tobin, Virtual, Virtual Physicians and Sanford, Danny Schreck died.

165.     As a direct, actual and proximate cause of the medical negligence of Dr. Tobin, Virtual, Virtual Physicians and Sanford, Plaintiffs have suffered the injuries and damages as set forth in Count I, which is by this reference incorporated as though fully set forth herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, SANFORD HEALTH,

SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER, SANFORD CLINIC, VIRTUAL RADIOLOGIC CORPORATION, DR. KATHERINE TOBIN, M.D. and VIRTUAL RADIOLOGIC PROFESSIONALS OF MINNESOTA, P.A jointly and severally herein in an amount of just, reasonable and adequate compensation for the injuries and damages as well as the loss of consortium, companionship, services and society they have sustained, together with interest as by law allowed and the costs of this action.

## COUNT V

### (VICARIOUS LIABILITY VERSUS SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER)

166.    Plaintiffs replead, restate and reallege each and every other allegation appearing above or below this paragraph by this reference and incorporate the same as though fully set forth herein.

167.    Virtual and Tobin were the actual and/or ostensible agents of Sanford Health, Sanford Health Network and Sanford Medical Center.

168.    Virtual and Tobin's wrongful actions constituting medical malpractice were committed within the scope of said actual and ostensible agency.

169.    A reasonably prudent person in the Danny Schreck's position would be justified in the belief that the care in question was being rendered by the hospital or its agents.

170.    Sanford, through its acts and conduct, made it appear to such patients as though the care in its entirety, including as rendered by the medical professionals at Sanford and including the CT scan and its interpretation, were provided by Sanford and its agents.

171.    Sanford is vicariously liable for the negligence of Virtual and Tobin.

172.    Sanford, Tobin, Virtual and Virtual Physicians are jointly and severally liable for the injuries to, and death of, Danny Schreck.

173.    As a direct, actual and proximate cause of the medical negligence of Dr. Tobin,

Virtual, Virtual Physicians and Sanford, Danny Schreck died.

174.    As a direct, actual and proximate cause of the medical negligence of Dr. Tobin, Virtual, Virtual Physicians and Sanford, Plaintiffs have suffered the injuries and damages as set forth in Count I, which is by this reference incorporated as though fully set forth herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, SANFORD HEALTH, SANFORD HEALTH NETWORK, SANFORD MEDICAL CENTER, SANFORD CLINIC, VIRTUAL RADIOLOGIC CORPORATION, DR. KATHERINE TOBIN, M.D. and VIRTUAL RADIOLOGIC PROFESSIONALS OF MINNESOTA, P.A jointly and severally herein in an amount of just, reasonable and adequate compensation for the injuries and damages as well as the loss of consortium, companionship, services and society they have sustained, together with interest as by law allowed and the costs of this action.

## DEMAND FOR TRIAL BY JURY

COMES NOW, Plaintiffs, and hereby demand trial by jury on all issues and matters raised in this lawsuit.

Respectfully submitted,

CARLSON & JONES, P.A.

/s/ John J. Carlson
John J. Carlson,
MN ID 0201492
215 East Highway 55
Suite 201
Buffalo, MN 55313
Tel: (763) 682-2220

## ACKNOWLEDGEMENT

The undersigned acknowledges that pursuant to Minn. Stat. § 549.211, the Court may award to any opposing party costs, disbursements and reasonable attorneys' fees and witness fees if the party represented by the undersigned, or the undersigned, acts in bad faith, asserts a claim or

defense that is frivolous and costly to the other party, asserts an unfounded position solely to delay the proceedings, or harasses or commits a fraud upon the Court.


Dated:  April 13, 2018 _____/s/ John J. Carlson_____

John J. Carlson